THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICHARD POPE, Defendant-Appellant.

Second District No. 2—84—1067

Opinion filed November 26, 1985.—Rehearing denied December 31, 1985.

730

Glenn A. Stanko and J. Steven Beckett, both of Reno, O'Byrne & Kepley, of Champaign, and Daniel Cain, of Sreenan & Cain, of Rockford, for appellant.

Daniel Doyle, State's Attorney, of Rockford (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Richard Pope, was charged with three counts of obscenity (Ill. Rev. Stat. 1983, ch. 38, par. 11—20(a)(1)), each dealing with the sale of an allegedly obscene magazine. At a jury trial defendant was found guilty on all three counts. At a subsequent sentencing hearing the trial court imposed concurrent sentences of 120 days on each of the counts as well as consecutive fines of $1,000 on each count. Defendant filed a timely notice of appeal.

In this court defendant contends: (1) that the Illinois obscenity statute (Ill. Rev. Stat. 1983, ch. 38, par. 11—20) is unconstitutionally vague, indefinite, uncertain and overbroad; (2) that the information under which defendant was charged failed to allege the necessary material definitional elements of obscenity and, therefore, was legally insufficient; (3) that the trial court abused its discretion in prohibiting defendant's *voir dire* examination designed to determine the jurors' bias or prejudice towards materials depicting sexual intercourse; (4) that the trial court erred in admitting certain photographs into evidence; (5) that the trial court erred in giving a combined issues instruction on all three counts of obscenity and in refusing defendant's tendered instruction relating to contemporary community standards; (6) that defendant was not proved guilty beyond a reasonable doubt; and, (7) that the trial court abused its discretion in sentencing the defendant.

On July 21, 1983, at approximately 9 a.m., Detective John Versetti of the Rockford police department went to an adult book store located at 623 7th Street. A sign on the exterior of the premises designated the store as an "Adult Book Store" and also indicated that patrons must be 18 years of age to enter. Upon entering the store the officer paid defendant, who was located at the counter, a 50¢ browsing fee. Versetti extensively described the interior of the store, pointing out that the store contained numerous magazines and films depicting all types of sexual activity, marital aids, and movie booths whose exterior doors depicted the type of sexual film one could view by entering the booths.

Versetti browsed for about 10 to 15 minutes, selecting three magazines, Full Throttle, Fuck Around, and Anal Animal, all of which were later admitted into evidence. Versetti placed the magazines face down on the counter. Defendant picked each one up and turned it over to get the sticker price on the front. The price of each magazine was $8.50. Defendant asked for the officer's browsing slip so as to apply it to the price of the magazines and then tried to ring the prices up on the cash register. When defendant could not get the register to work, he commented that he was new at the store, did not know how to fix the register, and asked Versetti to return later when the register was fixed. The officer did return later in the morning at approximately 10 o'clock and purchased from the defendant the three magazines the officer had earlier left with the defendant.

Jack Rinehart, a detective assigned to the identification section of the Rockford police department, also testified on behalf of the State. Rinehart stated that on July 21, 1983, at about 3:45 p.m. he had

taken photographs of the exterior and interior of the adult book store at 623 7th Street where defendant worked. During his testimony it was revealed that the photographs had been mislabeled in that the address written on the back of them stated "519 7th Street" instead of "623 7th Street." The officer explained that this confusion had occurred because pictures had been taken the same day of another store located at 519 State Street. Rinehart testified that he knew the pictures being introduced into evidence were the ones he took because he and the photographer who took the pictures of the State Street store put their photographs in separate envelopes and that the developed pictures now being displayed were those that returned in the envelope for the 7th Street store.

On cross-examination Rinehart admitted that he had no independent knowledge whether the pictures which constituted the State's exhibits Nos. 10 through 17 and which portrayed the interior of an adult book store, showed what exactly was in the 7th Street store. On redirect examination, however, Rinehart pointed out that the case number for the instant case appeared on the back of each photograph as well as the date and time the pictures were taken and the name of the photographer (the witness) who took the pictures. Additionally, Rinehart stated that he had not participated in nor handled the evidence for the State Street case.

Defendant objected on relevancy grounds to the admission of the State's exhibits Nos. 7 and 8, depicting the counter area of the book store. Defendant also objected to the State's exhibits Nos. 9 through 17, interior shots of the store, based on the fact that there had not been adequate foundation for their admission. The trial court admitted the State's exhibits Nos. 7 through 17 into evidence.

Defendant's first witness was Philip Lark, a college student. Lark testified that he had been employed by defense counsel to visit adult book stores in Winnebago, Champaign, Rock Island, McLean, Macon and Sangamon counties, to determine the availability and acceptability of sexually explicit materials at these various locations. The witness described the exterior and interior of each book store he visited and the clientele he encountered in each as well as the magazines he purchased in the stores. Lark stated that the materials purchased by him accurately contained pictorial portrayals of the sexual activity observed in publications and other materials available in each book store visited, including heterosexual and homosexual conduct, traditional, anal and oral intercourse, and group sex.

Defendant also presented an expert witness, Dr. Roderick Bell, a social scientist, who testified regarding a 1983 public opinion poll he

had conducted of 800 people in Illinois. The poll was designed to sample and report the attitude of adults living within the State regarding the depiction of sexually explicit materials. It was Dr. Bell's opinion that the results of the survey showed that a trend existed from 1978 to 1983 towards greater acceptance of the dissemination of sexually explicit materials for adults only. On cross-examination, Dr. Bell explained that "consensus" meant "agreement," and that in his survey consensus by those who were tested was found in only one question. According to Bell, the lack of consensus would indicate that there was no standard.

At the jury instruction conference, over defendant's objection, the State's issues instruction, which combined all three counts into one instruction, was given. (State's instruction No. 10.) Defendant's instructions Nos. 3, 4 and 5, which were separate issues instructions for each of the three counts, were refused. Defendant's instruction No. 7, relating to proof of contemporary community standards, was also rejected.

The jury found defendant guilty of the crime of obscenity on all counts. The defendant filed a timely post-trial motion, which was denied.

At the sentencing hearing, no presentence report was submitted to the trial judge and no evidence in aggravation was presented by the State. Betty Pope, defendant's mother, and Nancy Gorzny, a longtime friend, testified in defendant's behalf, speaking favorably of defendant's character and reputation in his community. Both witnesses acknowledged that defendant was still employed at the adult book store. At the conclusion of the hearing, the court imposed sentences of 120 days on each of the three counts and consecutive fines of $1,000 on each count. The court provided no reasons for defendant's imprisonment other than an allusion to his continued employment at the adult book store.

■ Defendant's first contention is that the Illinois obscenity statute (Ill. Rev. Stat. 1983, ch. 38, par. 11—20) is unconstitutional because it provides little guidance to persons who might be affected by it. This contention is without merit as the Illinois Supreme Court has consistently held that the obscenity statute is not impermissibly vague or overbroad, that prohibitions are clear, and that it does not invade areas of personal freedom. *People v. Ridens* (1974), 59 Ill. 2d 362, 321 N.E.2d 264; *People v. Ward* (1976), 63 Ill. 2d 437, 441, 349 N.E.2d 47.

Additionally, defendant argues that the Illinois obscenity statute is constitutionally weak because (1) it allows the trier of fact to consider the effect of allegedly obscene materials on children as part of the rel-

evant community; (2) it fails to require the application of an objective standard as opposed to a contemporary community standard in finding that allegedly obscene material is "utterly without redeeming social value"; and, (3) it fails to allow an affirmative defense for dissemination to all adults instead of certain special classifications of persons.

■ Defendant's argument that the obscenity statute is unconstitutionally weak because it permits children to be included in determining the relevant community standard is equally without merit. The obscenity statute specifically addresses this challenge. Section 11—20(c) of the statute states that "[o]bscenity shall be judged with reference to ordinary adults" and that children should be considered as part of the relevant community only when the allegedly obscene materials are designed for or directed to children. (Ill. Rev. Stat. 1983, ch. 38, par. 11—20(c).) Thus, unless children are the intended recipients of the allegedly obscene materials at issue in the case, they cannot be included as part of the community in an obscenity case.

■ Defendant next challenges the obscenity statute on the basis that a constitutional infirmity exists because an objective standard as opposed to a contemporary community standard should be required in determining if allegedly obscene materials are "utterly without redeeming social value." To support this contention, defendant relies heavily on a Wisconsin Supreme Court case (*State v. Princess Cinema of Milwaukee, Inc.* (1980), 96 Wis. 2d 646, 292 N.W.2d 807), in which that court refused to further judicially construe the Wisconsin obscenity statute and called upon the Wisconsin legislature to redefine obscenity so as to agree with the most recent United States Supreme Court cases in the area of obscenity. However, *Princess Cinema* is distinguishable from the case at bar because Illinois courts have never been reluctant to construe the constitutionality of the Illinois obscenity statute. It should also be noted that, thus far, the United States Supreme Court has never held that an objective standard as opposed to a community one should be applied in adjudging if materials are "utterly without redeeming social value."

■ Last, defendant contends the Illinois obscenity statute is vague because it fails to allow an affirmative defense for dissemination to all adults instead of certain special classifications of persons. Defendant presents no argument for this contention but merely refers this court to a New York case in which that court held that the New York obscenity statute must be interpreted to permit dissemination to any adult. (*People v. Wrench* (1975), 83 Misc. 2d 95, 371 N.Y.S.2d 833.) This court chooses not to address this argument, as the New

York case has no precedential value in this court (*Ladd Construction Co. v. Insurance Co. of North America* (1979), 73 Ill. App. 3d 43, 47, 391 N.E.2d 568), and no similar holding has ever been reached by the United States Supreme Court.

■ Finally, since the Illinois Supreme Court has declared the Illinois obscenity statute to be constitutional, the defendant is in the wrong forum for the relief he seeks. When the supreme court of this State has declared the law in any point, only it can overrule and modify its opinion, and an appellate court is bound by its decision. *Village of Morton v. Thomas* (1983), 116 Ill. App. 3d 676, 680, 452 N.E.2d 865; *People v. Tannahill* (1976), 38 Ill. App. 3d 767, 770-71, 348 N.E.2d 847.

■ Defendant's second contention is that the information charging him with three counts of obscenity was insufficient because it did not incorporate the definition of obscenity. Defendant argues that the failure to include the necessary definitional elements of obscenity in the information prevented defendant from receiving adequate notice of the charge against him so as to prepare a defense. This court has previously rejected a similar argument in *People v. Bailey* (1984), 125 Ill. App. 3d 346, 465 N.E.2d 979. Based on our opinion in *Bailey*, and on the charging instrument in the instant case, we see no reason why this court should not adhere to our reasoning and decision set forth in *Bailey* and reject defendant's argument that the information was legally insufficient because it failed to allege the necessary definitional elements of obscenity.

Next, defendant contends that the trial court abused its discretion in limiting defendant's *voir dire* examination by not allowing defendant to ask certain questions designed to determine prospective jurors' bias and preconceived notions regarding sexually explicit material. Conversely, the State argues that in sustaining the State's objections to defendant's questions, the court was properly applying Supreme Court Rule 234. See 87 Ill. 2d R. 234.

■ ■ The purpose of *voir dire* is to assure the selection of an impartial jury. (*People v. Jackson* (1977), 69 Ill. 2d 252, 260, 371 N.E.2d 602; *People v. Chamness* (1984), 129 Ill. App. 3d 871, 873, 473 N.E.2d 476.) But, no precise technical test or formula exists for determining whether a prospective juror will possess the appropriate degree of impartiality. (*People v. Washington* (1982), 104 Ill. App. 3d 386, 390, 432 N.E.2d 1020.) As a result, circuit courts are granted broad discretion in conducting and managing *voir dire* (87 Ill. 2d R. 234), and the determination whether to ask certain questions of prospective jurors is within this discretion. (*People v. Chamness* (1984), 129 Ill. App. 3d

871, 873, 473 N.E.2d 476.) *"Voir dire* questioning may not be used as a means for pre-educating and indoctrinating prospective jurors as to a particular theory or defense or impanelling a jury with particular predispositions [citation], nor may the questions concern matters of law or instructions [citations]." 129 Ill. App. 3d 871, 873-74, 473 N.E.2d 476.

■ Limitation of *voir dire* questioning may constitute reversible error if it results in denying a party a fair opportunity to probe an important area of potential bias or prejudice among prospective jurors. (*Gasiorowski v. Homer* (1977), 47 Ill. App. 3d 989, 991, 365 N.E.2d 43.) Here, in the instant case, defense counsel had been permitted to ask various questions referring to the prospective jurors' knowledge or familiarity with sex magazines, X-rated movies, and adult book stores. The jurors were also asked if their religious beliefs would influence their ability to decide the case fairly, and if they had any predispositions, one way or another, regarding the existence of adult book stores. This court is of the opinion that these questions and others of a similar nature were sufficient to establish any bias or preconceived notions regarding sexually explicit materials. Moreover, those jurors who expressed doubts regarding their ability to be impartial, based either on their religious or personal beliefs, were excused for cause by defense counsel.

■ The four questions which were prohibited by the trial court were unnecessary for a determination of the prospective jurors' bias or prejudice. Rather, we agree with the trial court's comment in sustaining the State's objections that defendant's questions were designed to ask the jurors to predecide the case. The questions defense counsel sought to be asked suggest that the defendant was "seeking particular kinds of jurors, rather than simply fair and impartial jurors, the latter of which were all defendant was entitled to have serve." (*People v. Phillips* (1981), 99 Ill. App. 3d 362, 368, 425 N.E.2d 1040.) In this respect, the questions were inappropriate and violative of Supreme Court Rule 234 (87 Ill. 2d R. 234), and it would have been error for the trial court to permit defendant to ask them.

■ Additionally, defendant complains that the prohibition of the contested questions prevented him from learning if the prospective jurors could set aside their personal opinions and apply the contemporary community standards. Defendant argues that in *Smith v. United States* (1977), 431 U.S. 291, 52 L. Ed. 2d 324, 97 S. Ct. 1756, the Supreme Court approved specific *voir dire* with respect to community standards. Although this is a true statement, none of defendant's questions centered upon or was concerned with the jurors' percep-

tions of community standards. Moreover, during the *voir dire*, inquiries were made of prospective jurors regarding their knowledge of community standards towards sexually explicit materials and their willingness to apply these standards. Those jurors who indicated that their personal opinions could affect their deliberation were excused by defense counsel. The standard for evaluating the trial court's exercise of discretion in deciding whether to permit or refuse supplemental questions posed by the parties during the *voir dire* process is whether the means employed to test the prospective jurors' impartiality have created a reasonable assurance that prejudice would be discovered if present. (*People v. DeSavieu* (1983), 120 Ill. App. 3d 420, 427, 458 N.E.2d 504; *People v. Washington* (1982), 104 Ill. App. 3d 386, 390, 432 N.E.2d 1020.) This court believes that the questioning in its entirety was sufficient to determine the prospective jurors' bias and prejudice concerning sexually explicit materials and, therefore, the trial court's prohibition of the contested questions did not amount to an abuse of the trial court's discretion.

Defendant's fourth contention is that the trial court erroneously admitted 11 photographs (State's exhibits Nos. 7 through 17) into evidence over defendant's objections. Defendant argues that the photographs lacked proper foundation for admissibility. The State responds that defendant has waived this issue by failing to object on this ground at the trial level or in defendant's post-trial motion. It is apparent, however, from the trial transcript that while objections to State exhibits Nos. 7 and 8 were based on relevancy, objections to State exhibits Nos. 9 through 17 were based on foundation grounds. In fact, the State concedes this fact. Nevertheless, the State argues that because exhibits Nos. 7 and 8 were based on relevancy at trial and because all of the photographs were classified as not relevant in defendant's post-trial motion, then defendant has waived foundation objections in this court.

An objection to evidence based upon a specific ground is a waiver of objection on all grounds not specified. (*People v. Andrews* (1982), 105 Ill. App. 3d 1109, 1112, 435 N.E.2d 706.) If defendant had objected to all of the photographs at trial based on relevancy grounds, then his contention in this court that their admission was erroneous because they lacked foundation would be deemed to be waived. However, as previously stated, only two photographs were objected to on relevancy grounds; the remainder were objected to on the ground of lack of foundation. Thus, defendant has waived the lack of foundation argument only as it pertains to State exhibits Nos. 7 and 8 and not as it pertains to exhibits Nos. 9 through 17.

■■ Defendant's lack of foundation argument centers on the fact that the officer providing the foundation testimony for the photographs was unable to express independent knowledge of the pictures (State's exhibits Nos. 10 through 17), depicting the interior of the book store at 623 7th Street where defendant worked, without looking at the identification tags on the back of the pictures. However, the officer's testimony also showed that he took pictures only of the book store at 623 7th Street, that he put the developed photos of that book store in the evidence envelope, that the address "519 7th Street" on the back of the photographs had to be incorrect because there was no adult book store at that location, that the case number on the back of the pictures was identical to the case number of the instant case, that the officer's name, as photographer, appeared on the back of each photo in question, and that the time at which the officer had taken the pictures also appeared on the back of the photographs.

To admit photographs into evidence, it is necessary that the photographs be identified by a witness as a portrayal of certain facts relevant to an issue of the case and be verified on personal knowledge as a correct representation of those facts. (*People v. Rolon* (1979), 71 Ill. App. 3d 746, 751, 390 N.E.2d 107; *Casson v. Nash* (1977), 54 Ill. App. 3d 783, 795, 370 N.E.2d 564.) Although the officer in the instant case admitted he had no independent knowledge if what was portrayed in State's exhibits Nos. 10 through 17 was what actually was contained in the 623 7th Street store, other testimony by the officer regarding the markings on the back of the exhibits and the fact that the officer took photos only of the 623 7th Street store supported the State's case that the pictures correctly represented the interior of the store.

■■ The fact that the photographs were taken at about 3:45 p.m. or 4 p.m. whereas defendant was arrested in the morning does not affect their relevancy, as defendant claims. No testimony or other evidence was presented at trial to indicate that there had been a material change in the appearance and condition of the interior of the book store. Moreover, this was not a situation where the interior was likely to be posed or altered in any way. We believe the photographs were taken at a time sufficiently soon after defendant's arrest to make them relevant and accurate.

■■ ■ The admissibility of photographs is within the sound discretion of the trial court (*City of Chicago v. Scandia Books, Inc.* (1981), 102 Ill. App. 3d 292, 299, 430 N.E.2d 14; *Casson v. Nash* (1977), 54 Ill. App. 3d 783, 796, 370 N.E.2d 564), and it is our opinion that the trial court did not abuse its discretion in admitting all of the

photographs. However, even if this court had determined that the trial court abused its discretion, we would rule that the admission of the photographs merely constituted harmless error. That the photographs were harmless is evident from Officer Versetti's testimony regarding the interior of the store at the time of his purchases and his verification of the magazines purchased, which were admitted into evidence without objection, and which were illustrative of the other graphic and explicit materials for sale within the adult book store.

Defendant next argues that by combining all three counts into one issues instruction (State's instruction No. 10) the jury was not allowed to apply the elements necessary for conviction of the crime of obscenity to each magazine separately. As a result, the instruction was misleading and confusing and defendant's instructions Nos. 3, 4, and 5, which allowed for separate consideration of each count, should have been given instead.

■■■ Defendant's instructions Nos. 3, 4, and 5, which were separate issues instructions for each allegedly obscene magazine sold by defendant, were three nonpattern instructions and were refused in light of the court's decision to tender the State's instruction No. 10. On the other hand, State's instruction No. 10 was taken from the Illinois Pattern Jury Instructions (IPI), Criminal, No. 9.60 through 9.61 (2d ed. 1981), and unless the trial court determines that a pattern instruction does not accurately state the law, that instruction should be used. 87 Ill. 2d R. 451(a); *People v. Haywood* (1980), 82 Ill. 2d 540, 545, 413 N.E.2d 410.

■■■ Jury instructions should not be misleading or confusing (*People v. Gathings* (1981), 99 Ill. App. 3d 1135, 1139, 425 N.E.2d 1313) and the jurors are properly instructed if all the instructions, construed together, properly inform them of the applicable law. (*People v. Gerecke* (1977), 45 Ill. App. 3d 510, 517, 359 N.E.2d 1178.) Moreover, any confusion or ambiguity in an instruction may be cleared up by another instruction (*People v. Jones* (1975), 26 Ill. App. 3d 78, 85, 325 N.E.2d 56), or by closing arguments of counsel. (*People v. Gerecke* (1977), 45 Ill. App. 3d 510, 517, 359 N.E.2d 1178.) The decision whether to give a non-IPI instruction is within the discretion of the trial court. (*People v. Moore* (1980), 89 Ill. App. 3d 202, 209, 411 N.E.2d 579.) That discretion is abused if the court's refusal in giving the instruction has the result of not instructing the jury as to a defense theory of the case which is supported by some evidence. *People v. Wolfe* (1983), 114 Ill. App. 3d 841, 852, 449 N.E.2d 980.

Here, this court finds no abuse of the court's discretion in refusing defendant's instructions. The State's instruction No. 10 identified

the elements of the offense of obscenity. Additionally, the jury was given separate verdict forms, both guilty and not guilty, for each of the three magazines. Also, during *voir dire* the State had informed the jurors that there were separate counts against defendant and that each count had to be considered separately. Finally, the State informed the jury during closing argument that for each count of obscenity against defendant the jurors had to determine whether defendant sold a magazine, whether he knew the nature or contents of the magazine at the time he sold it, and whether the magazine was obscene. Thus, we find that the court's refusal to tender defendant's instruction Nos. 3, 4, and 5, which were separate issues instructions for each magazine sold, was not erroneous.

■■■ Defendant also contends that the trial court erred in refusing defendant's instruction No. 7, a non-IPI instruction, which related to contemporary community standards. A non-IPI instruction should be used only if a pattern instruction does not contain an accurate instruction on the subject that the jury should be instructed upon and if the tendered non-IPI instruction is simple, brief, impartial and free from argument. (87 Ill. 2d R. 451(a); *People v. Wolfe* (1983), 114 Ill. App. 3d 841, 852, 449 N.E.2d 980.) Defendant's instruction No. 7 read as follows:

"In the absence of evidence relating to contemporary community standards brought by the defendant, the trier of fact are the exclusive judges of what are the contemporary community standards.

However, when the defendant provides evidence, such as survey evidence, pertaining to contemporary community standards, the jury must consider all competent evidence presented pertaining to what, if any, community standards exist."

The State maintains that the second paragraph of defendant's instruction No. 7 is argumentative because it argues whether or not a community standard exists and, therefore, whether the offense of obscenity exists. This court is in agreement and would note also that the instruction is argumentative because the instruction singles out a piece of evidence, the survey, as the most important evidence in the case. Thus, on this basis alone this court concludes that defendant's instruction No. 7 is argumentative and that the trial judge was correct in refusing this instruction.

Moreover, the court did tender defendant's instruction No. 2 to the jury which specifically stated that in determining whether a magazine is obscene the jurors were not to use their own personal standards. Rather, they were to determine how the magazine would be

viewed by ordinary adults in the whole State and not just by people in a single city, town, or region. Thus, this instruction defined the extent of the "community" by which the standard was to be measured and instructed the jury that it could not adopt a "community" lesser than Statewide.

 Defendant next argues that he was not proved guilty beyond a reasonable doubt of obscenity because the State failed to prove *"scienter,"* *i.e.*, that defendant had knowledge of the nature or contents of the allegedly obscene magazines he sold. In support of this contention defendant cites this court's decision in *People v. Hart* (1981), 101 Ill. App. 3d 343, 427 N.E.2d 1352. However, *Hart* is distinguishable from the case at bar. In *Hart* the defendant was charged with making available to the public three allegedly obscene films located in an adult book store. This court found that the evidence did not establish that defendant knew which films an investigating officer was going to choose out of 36 possible choices nor that she knew that the other 33 movies in the arcade section of the book store were obscene. 101 Ill. App. 3d 343, 351, 427 N.E.2d 1352.

In the instant case, it would stretch this court's imagination to believe that defendant did not know or should not have known of the contents of the three magazines that he sold to the officer. As Officer Versetti's testimony revealed, the adult book store where defendant worked contained numerous magazines, films, and movie booths, all of which freely exhibited sexual activity of all types. Additionally, Officer Versetti placed the magazines to be purchased face down on the counter in front of defendant. Defendant had to turn them over to get the sticker price of each. In so doing defendant had to observe both the back and front covers of the three allegedly obscene magazines. We believe that one glance at the covers of the three magazines in question is sufficient to establish the obscenity of the magazines. It is well settled in Illinois that even casual examination of an obscene magazine cover is sufficient to establish a violation of the obscenity statute. (*People v. Moore* (1977), 53 Ill. App. 3d 75, 77, 368 N.E.2d 586; *People v. Doto* (1977), 53 Ill. App. 3d 62, 66, 368 N.E.2d 577; *People v. Glass* (1976), 41 Ill. App. 3d 43, 47, 353 N.E.2d 214.) Regardless of defendant's contention, that he was new at the book store, we find it difficult to believe that defendant would not be fully apprised of the type and character of the three magazines simply by looking at them. Additionally, the high price charged for the publications as well as the fact that a 50¢ browsing fee was charged as admission are indicative that defendant possessed the necessary *scienter*.

 Defendant also contends that he was not proved guilty beyond a reasonable doubt because he produced evidence of contemporary community standards in the form of expert testimony regarding a survey of sexually explicit materials in adult book stores which the State was unable to rebut. However, as the State points out, the opinion of an expert need not be accepted. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 122, 273 N.E.2d 809; *People v. Slago* (1978), 58 Ill. App. 3d 1009, 1016, 374 N.E.2d 1270.) Moreover, the fact that the jurors did not adopt the standard which defendant's expert maintained the survey established does not mean the jurors did not apply any community standard at all.

Here, the jurors heard Dr. Roderick Bell's testimony regarding how his survey was conducted and what the results indicated. However, as brought out by the prosecution on cross-examination of Dr. Bell, the questions in the survey were phrased in such a manner that those taking the survey were asked their personal opinions regarding whether they thought it was all right, or not all right, for adults who so desired to purchase magazines at an adult book store or attend movies at an adult theater depicting nudity and sexual activities. As the prosecutor stressed, and Dr. Bell did not deny, many of the individuals surveyed could have deemed it appropriate for those who desired to frequent adult theaters and book stores to be allowed to do so, while they, the individuals in the survey, personally were opposed to such establishments. Thus, just because those surveyed deemed it all right for others to choose to view sexually explicit materials did not necessarily mean that the "community standard," as a whole, had changed.

 During *voir dire*, the State's closing argument, and the instructions given to the jury, emphasis was placed on the fact that the jurors were not to apply a personal standard in finding the magazines obscene but rather a community standard for the State of Illinois. Because the jurors did not decide the case as defendant wished does not mean that the jurors did not consider the survey results in Dr. Bell's testimony or that they decided incorrectly. The jury heard and saw all of the evidence presented. It was for the jury to pass on the credibility of the witnesses, to weigh the evidence, and to draw all reasonable inferences therefrom; a reviewing court may not substitute its judgment simply because it would have decided differently. (*Koris v. Norfolk & Western Ry. Co.* (1975), 30 Ill. App. 3d 1055, 1058, 333 N.E.2d 217.) Thus, it is this court's opinion that the jury's determination that defendant was proved guilty beyond a reasonable doubt was correct.

■■ Defendant's last contention is that his sentence was improper because the trial court failed to make any of the findings required under section 5—6—1(a) of the Unified Code of Corrections when conditional discharge and probation are denied. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—1(a).) Additionally, defendant argues that the trial court abused its discretion in denying defendant conditional discharge or probation.

Sections 5—6—1(a)(1) and (2) establish that a trial court may not deny probation or discharge unless the court is of the opinion that a defendant's imprisonment is necessary for the protection of the public or that probation or conditional discharge would deprecate the seriousness of a defendant's conduct and would be inconsistent with the ends of justice. (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—6—1(a)(1), (2).) It is defendant's contention that the record must indicate that the sentencing judge is of the opinion that imprisonment is necessary based on the findings set forth in sections 5—6—1(a)(1) or (2) and that the record in the instant case is void of any such indication.

Prior to sentencing defendant to concurrent terms of 120 days in the county jail on each count and to imposing consecutive fines of $1,000 on each count, the court's only comment regarding the imposition of the sentence was:

"I believe there is a difference between Mr. Morrison and this gentleman. Mr. Morrison, if I remember the testimony and sentencing, had left the employment and, I think, removed himself from the jurisdiction."

Substantial compliance with sections 5—6—1(a)(1) and (2) is required but may exist even though the trial court does not expressly recite that "imprisonment is necessary for the protection of the public" or that "probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." (*People v. Cox* (1980), 82 Ill. 2d 268, 281, 412 N.E.2d 541; *People v. Roberts* (1983), 115 Ill. App. 3d 384, 388, 450 N.E.2d 451.) This court has previously stated that "[s]ubstantial compliance may be found in the trial court's discussion of the presentence report or the factors presented in the sentencing hearing." (115 Ill. App. 3d 384, 389, 450 N.E.2d 451.) However, where the record is completely silent "it would stretch the phrase 'substantial compliance' too far to find that, because the court presumably read and listened, its opinion may be deemed to have been stated." *People v. Turner* (1982), 110 Ill. App. 3d 519, 524, 442 N.E.2d 637.

In the instant case no presentence report had been submitted to the trial judge since defendant was sentenced for a misdemeanor of-

fense as opposed to a felony. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—3—1.) Additionally, the State presented no evidence in aggravation; defendant had no history of prior criminality; and two witnesses who testified in mitigation spoke favorably of defendant. The trial court's sole comment, prior to imposing sentence, indicated that defendant's continued employment in the adult book store may have been the basis for the court's denial of probation or conditional discharge and the imposition of concurrent terms of imprisonment.

Defendant points out this appellate court in *People v. Hart* (1981), 101 Ill. App. 3d 343, 344, 427 N.E.2d 1352, found that it was improper for a trial court to impose a sentence of imprisonment on the basis that an individual was paid to work at an adult book store similar to the one at bar. In *Hart* this court stated that had it not already determined to reverse defendant's conviction on another basis, it would vacate defendant's sentence of imprisonment and remand for resentencing based on the court's improper consideration of defendant's paid work at the book store. Here, in the instant case, no reasons were expressed for the court's denial of a sentence of probation or conditional discharge other than an inference, derived from the disposition of another case, that defendant had continued his employment at the book store.

 ██ Normally, the trial court is "the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight." (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882; *People v. Jordan* (1985), 130 Ill. App. 3d 810, 814, 474 N.E.2d 1283.) The determination and imposition of a sentence involves considerable discretion. (*People v. Jordan* (1985), 130 Ill. App. 3d 810, 813, 474 N.E.2d 1283.) This court's standard of review is whether the trial court exercised that discretion and whether it abused that discretion in imposing sentence. (*People v. Kuesis* (1980), 83 Ill. 2d 402, 408, 415 N.E.2d 323.) We believe the trial court's sole reference to the defendant in *People v. Morrison* (1985), 138 Ill. App. 3d 595, is an insufficient basis for its denial of probation or conditional discharge here.

For the reasons stated, we find that defendant's conviction is affirmed, but that his sentence be vacated and the case remanded for resentencing. Thus, the judgment of the trial court of Winnebago County is affirmed in part, reversed in part, and remanded.

Affirmed in part; reversed in part; and remanded.

STROUSE and UNVERZAGT, JJ., concur.