THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN LYLE HALL, Defendant-Appellant.

Second District   No. 2—85—0231

Opinion filed March 17, 1986.—Rehearing denied May 6, 1986.

J. Steven Beckett, of Reno, O'Byrne & Kepley, of Champaign, and Daniel J. Cain, of Sreenan & Cain, P.C., of Rockford, for appellant.

Daniel Doyle, State's Attorney, of Rockford (William L. Browers and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, John Lyle Hall, was charged with the offense of obscenity as a result of the sale of an allegedly obscene magazine. (Ill. Rev. Stat. 1983, ch. 38, par. 11—20(a)(1).) Defendant was found guilty by a jury and subsequently received a sentence of 140 days' imprisonment and a fine of $1,000. Defendant filed a timely notice of appeal.

In this court defendant contends: (1) that, where the defendant introduced public opinion evidence regarding community standards of the State of Illinois, the State was compelled to do more to sustain a conviction than introduce the allegedly obscene magazine into evidence; (2) that the trial court erred in refusing to tender defendant's instruction No. 5, which related to evidence of community standards; (3) that the trial court erred in permitting the State to cross-examine the defendant's expert psychiatric witness abut the prurient appeal of the allegedly obscene magazine; (4) that the trial court abused its discretion in imposing a sentence of 140 days' incarceration on defendant; and (5) that the Illinois obscenity statute is unconstitutional.

On the evening of June 21, 1984, Brian Harrison, who was employed as a deputy by the Winnebago County sheriff's department, went to the Sunset Outdoor Theater. After watching a movie, Harrison went to the concession stand at the theater. Within the concession stand was an area containing a counter displaying marital aid devices. On a three-tier bookshelf were displayed sexually explicit magazines. Harrison entered the book area where defendant, John Lyle Hall, was sitting at a counter, selected a magazine, entitled "Tricking," which depicted homosexual activity on its covers, approached defendant at the cash register, and placed the magazine

face down on the counter. Defendant picked up the magazine, turned it over to get the price, rang the price up on the cash register, and then accepted payment for the magazine. Harrison took the magazine and left.

Lori Seagren, a crime scene technician, testified that on June 22, 1984, she went to the Sunset Outdoor Theater to take photographs of the bookshelf in the concession stand. Seagren stated that the magazines on the bookshelf were sexually explicit.

Defendant's first witness was Carl Hamann, a physician specializing in psychiatry. Hamann testified as to his experience in dealing with individuals who had sexually related problems and his professional understanding of "sexually explicit materials," which he defined as the verbal expression or pictorial expression of explicit behavior. The witness defined prurient interests as an "abnormal interest in sex, excreta, and all the things related to sex." The witness stated that he had looked through the magazine, "Tricking," and that it depicted all positions and attempted contacts between homosexuals. Hamann testified that the attempted positions fell within the range of sexual conduct which he considered normal. In the witness' opinion the magazine, taken as a whole, did not appeal to the prurient interests of an average adult.

On cross-examination Hamann admitted that he had not read the storyline of the magazine but had merely looked at the pictures for about three minutes. The witness also related that he had never conducted any type of research or talked with individuals regarding sexually explicit magazines, such as the one in question, and that his conclusion that the magazine, "Tricking," did not appeal to an individual's prurient interest was his own opinion. The prosecutor showed Hamann various pictures in "Tricking," asking if they depicted a normal interest in sex. Defense counsel objected, arguing that the magazine must be taken as a whole in determining if it is obscene. The trial court overruled the objections, pointing out that the whole is the sum of the parts. Hamann then looked through the magazine, page by page, stating that none of the pictures was more likely to attract a prurient interest than any of the others. When asked if sexually explicit materials appeal to the prurient interests of individuals, the witness opined that they might sometimes "but not by and large."

On redirect, the witness was asked to read the story accompanying the pictures in the magazine, "Tricking." After reading the magazine, the witness stated that the words did not change his prior opinion regarding the appeal of the magazine to the average adult.

On recross, Hamann was asked if it was his testimony that "Tricking" would appeal to a normal interest in sex. Hamann replied that the magazine would have little appeal to the average person but a greater appeal to homosexual individuals.

Defendant's next witness, John Breen, a legal investigator, testified that he had been employed by defense counsel to visit adult bookstores in Cook, De Kalb, McLean, Sangamon, and Peoria counties, to determine the availability and acceptability of sexually explicit materials in adult bookstores in Illinois. The witness described the exterior and interior of each bookstore he visited and the clientele he encountered in each, as well as the magazines he purchased in the stores. Breen stated that the materials purchased by him accurately contained pictorial portrayals of the sexual activity observed in publications and other materials available in each bookstore visited, including heterosexual and homosexual intercourse and anal and oral intercourse. Breen also testified that he had reviewed the magazine, "Tricking," and that, in his opinion, it was not as sexually explicit as the magazines he had purchased at the various bookstores. On cross-examination, Breen admitted that he had not read the storyline in "Tricking." He also related that defense counsel had instructed him to purchase magazines depicting heterosexual, homosexual and bisexual conduct.

Defendant's final witness was Roderick Bell, a social scientist, who testified regarding a public opinion poll (survey) he had conducted of 800 adults in Illinois to determine community standards in obscenity cases. For this survey, Bell used a questionnaire designed to sample and report the attitude of adults living in Illinois toward the depiction of sexually explicit material. Bell made a comparison of the 1983 survey with others he conducted in 1978 and 1980, involving virtually the same questionnaire, pointing out that the results of the surveys showed that a larger percentage of those surveyed in 1983 than in 1980 and 1978 found sexually explicit materials acceptable for the average adult.

On cross-examination, Bell stated that although one of the questions on the questionnaire concerned changing standards toward sexually explicit materials, the people surveyed were not questioned regarding what they believed to be the current standard. Additionally, the manner in which an individual answered certain questions would depend on that person's idea of what constituted sexually explicit materials as well as his life experiences with such materials.

At the jury instruction conference the State objected to defendant's instruction No. 5 relating to proof of contemporary community

standards. The bases for the State's objections were that it was a non-IPI instruction, that it called undue attention to community standards' evidence, and that it was repetitive of defendant's instruction No. 3. The court denied the instruction, commenting that it singled out one piece of evidence (the survey) to the exclusion of all other evidence.

The jury found defendant guilty of obscenity. Defendant filed a motion for judgment notwithstanding the verdict, or, alternatively, for a new trial which was denied.

At the sentencing hearing the State presented no evidence in aggravation. Catherine Hall, defendant's wife, testified in defendant's behalf, relating that the couple had two children and were expecting another child; that defendant's parents lived with the couple; that neither she nor her husband were presently employed; that the only income the couple had was unemployment insurance; and that her husband had never been convicted of any other crime. Defendant presented no other evidence in mitigation. The State sought the maximum sentence allowed under the obscenity statute, 364 days' imprisonment and a fine of $1,000. Since defendant was the manager of the bookstore at the Sunset Outdoor Theater rather than just a clerk, the State specifically asked the court to consider a sentence which would deter others from committing the same offense as defendant. Defense counsel stressed that defendant was a first-time offender, that the offense of which defendant had been found guilty was a Class A misdemeanor, and that the appropriate penalty was a monetary one. The court imposed a sentence of 140 days' imprisonment and a fine of $1,000. This appeal followed.

Defendant first contends that the State is compelled to do more to sustain a conviction for obscenity than introduce the allegedly obscene magazine into evidence when a defendant introduces public opinion evidence regarding community standards. Defendant maintains that because the State, in the instant case, failed to introduce any other evidence, it failed to meet its burden of proof.

■ The results of Bell's public opinion survey reflected a greater acceptance by the public of "sexually explicit" materials. However, greater acceptance of "sexually explicit" materials by the public does not indicate greater acceptance of obscene material. The questions in Bell's survey referred to "sexually explicit" materials and, as the State points out, material which is sexually explicit is not obscene unless it meets the standards in *People v. Ridens* (1974), 59 Ill. 2d 362, 321 N.E.2d 264. *Ridens* sets forth three requirements in determining the obscenity of material: (1) that the material taken as a

whole appeals to a prurient interest in sex; (2) that the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (3) that the material be utterly without redeeming social value. (59 Ill. 2d 362, 372-73, 321 N.E.2d 264.) None of the questions in Bell's questionnaire was designed to disclose the community's opinion regarding materials which met these requirements. Thus, contrary to defendant's apparent belief, the survey results are not conclusive as to whether the magazine in question would be acceptable according to statewide community standards regarding obscene materials.

■ Defendant also argues that, in light of the evidence he introduced regarding contemporary community standards, Illinois should no longer allow the State to rely strictly on jurors, such as these in the instant case, to be the "exclusive judges" of contemporary standards. Defendant's argument, here, appears to be that the jurors, residents of Winnebago County, were isolated from the "outside world." In other words, these jurors were lacking the background and experience to fairly evaluate material alleged to be sexually explicit. However, the transcript of the *voir dire* shows that the jurors selected possessed some familiarity with sexually explicit magazines. Moreover, during the *voir dire*, prospective jurors were questioned regarding their knowledge of community standards towards sexually explicit materials and their willingness to apply these standards. Those jurors who displayed any difficulty in applying community, as opposed to personal, standards in evaluating the magazine in question were excused by defense counsel. Also during *voir dire*, the State's closing argument, and the instructions given to the jury, emphasis was placed on the fact that the jurors were not to apply their personal standards in finding the magazines obscene but rather a community standard for the State of Illinois. Because the jury failed to decide the case as defendant wished, by adopting the standard Bell maintained his survey established, does not mean that the jury did not apply any community standard at all or that it decided incorrectly. It was the duty of the jury which heard and saw all of the evidence presented to pass on the credibility of the witnesses, to weigh the evidence, and to draw all reasonable inferences therefrom; a reviewing court may not substitute its judgment simply because it would have decided differently. *People v. Pope* (1985), 138 Ill. App. 3d 726, 743, 486 N.E.2d 350; *Koris v. Norfolk & Western Ry. Co.* (1975), 30 Ill. App. 3d 1055, 1058, 333 N.E.2d 217.

It is unlikely, however, that this court would have decided differ-

ently. One glance at the covers of the magazine in question would be sufficient to establish its sexual explicitness. That the magazine also satisfies the requirements of *People v. Ridens* (1974), 59 Ill. 2d 362, 372-73, 321 N.E.2d 264, thereby establishing its obscenity, is apparent from an examination of the magazine's prose and pictures. Contrary to defendant's contention that the magazine depicts mild sexual content, the magazine is replete, both pictorially and verbally, with the various positions and attempted contacts two male individuals performed in inserting and manipulating their genitals. Clearly, the magazine itself demonstrates that the State met its burden in proving defendant was guilty beyond a reasonable doubt of obscenity and that the jury's determination of his guilt was correct.

Defendant's second contention is that the trial court erred in refusing to tender defendant's instruction No. 5, which related to evidence of community standards. Defendant's instruction No. 5 reads as follows:

> "In the absence of evidence relating to contemporary community standards brought by the defendant, the trier[s] of fact are the exclusive judges of what are the contemporary community standards.
>
> However, when the defendant provides evidence, such as survey evidence, pertaining to contemporary community standards, the jury must consider all competent evidence presented pertaining to what, if any, community standards exist."

Defendant maintains that the court's refusal to tender this instruction to the jury constituted reversible error.

At the jury instruction conference, the State set forth three reasons for its objection to the giving of instruction No. 5: (1) the instruction was a non-IPI instruction; (2) the instruction called undue attention to community standards evidence; and (3) the instruction recapitulated another instruction of defendant's which was to be given to the jury.

■■ ■ A non-IPI instruction should be used only if a pattern instruction does not contain an accurate instruction on the subject that the jury should be instructed upon and if the tendered non-IPI instruction is simple, brief, impartial and free from argument. (87 Ill. 2d R. 451(a); *People v. Wolfe* (1983), 114 Ill. App. 3d 841, 852, 449 N.E.2d 980.) We believe instruction No. 5 is argumentative because it singles out a piece of evidence, Bell's public opinion survey on sexually explicit materials, as the most important evidence in the case. Thus, on this basis alone, this court concludes the judge was correct in refusing the instruction. See *People v. Pope* (1985), 138 Ill. App.

3d 726, 741, 486 N.E.2d 350.

Moreover, as the State points out, the court did tender defendant's instruction No. 3 to the jury which specifically directed the jurors to refrain from applying their own personal standards in determining whether the magazine in question was obscene. Rather, the jurors were instructed to determine how the magazine would be viewed by ordinary adults in the whole State and not just by people in a single city, town, or region. Thus, instruction No. 3 categorically defined the extent of the "community" by which the standard was to be measured and charged the jury not to adopt a "community" lesser than statewide. Clearly, this instruction echoed that of instruction No. 5 and, therefore, the court was correct in refusing it, as repetitive instructions are not favored and should be avoided. (*People v. O'Shaughnessy* (1981), 102 Ill. App. 3d 966, 973, 430 N.E.2d 325; *People v. Looney* (1977), 46 Ill. App. 3d 404, 411, 361 N.E.2d 18.) Also, as the State points out in its brief, the IPI instruction (Illinois Pattern Jury Instruction (IPI), Criminal, No. 9.57 (2d ed. 1981)), which was tendered to the jury as defendant's instruction No. 3, was modified by defendant to emphasize that community standards rather than personal standards must be used in determining if the magazine in question was obscene. We conclude, therefore, it was not error for the trial court to refuse to tender defendant's instruction No. 5.

Next, defendant contends that the trial court erred in permitting the State to cross-examine defendant's expert psychiatric witness regarding the prurient appeal of individual photographs in the magazine. Defendant asserts that it was reversible error for the trial court to permit the prosecutor to ask, during cross-examination of Dr. Hamann, a physician specializing in psychiatry, whether specific photographs in the magazine appealed to prurient interests. It is defendant's position that this cross-examination emasculated the legal definition of obscenity.

In Illinois, obscenity is determined by a three-part test. (*People v. Ridens* (1974), 59 Ill. 2d 362, 372-73, 321 N.E.2d 264.) The first element of the tripartite definition is whether the material, considered as a whole, has, as its predominant appeal, an appeal to prurient interests, *i.e.*, a shameful or morbid interest in nudity, sex, or excretion. This portion of the definition clearly indicates that the material in question must be "considered as a whole." However, as the trial court emphasized, in overruling defendant's objections to the prosecutor's questions regarding individual photographs within the magazine, the "whole" of the material is the sum of its parts. Thus, in determining

if material is obscene, the individual parts, the pictures and prose, should be considered.

Here, this court believes it is obvious from the magazine's photographs and prose regarding the sexual encounter of two male individuals that the magazine, taken as a whole, appeals to prurient interests. Admittedly, some photographs within the magazine have more prurient appeal than others, but Dr. Hamann was asked by the prosecutor to go through the entire magazine "page by page, looking at each page, each picture, and tell me if there is [sic] any pages in there or pictures that would appeal to the prurient interests of an individual." Additionally, the court emphasized that if the prosecutor was going to ask Hamann's opinion regarding the photographs within the magazine, the prosecutor was going to have to go through the magazine substantially. We believe the prosecutor's questions centering upon the magazine's photographs indicate that he was asking Dr. Hamann his opinion regarding the prurient appeal of the entire magazine.

■ What constitutes permissible cross-examination is for the trial court to determine, and its decision will not be upset on appeal unless that discretion has been abused and results in apparent prejudice to the defendant. (*People v. Blakes* (1976), 63 Ill. 2d 354, 358, 348 N.E.2d 170; *People v. Hunter* (1984), 124 Ill. App. 3d 516, 538, 464 N.E.2d 659.) In our opinion, the trial court's ruling did not constitute an abuse of discretion nor did it result in prejudicing the defendant. Nevertheless, even if we were to determine that it was error for the trial court to permit this line of questioning, we would find the error to be harmless. Hamann never admitted during cross-examination that any of the magazine's photographs appealed to a prurient interest. According to Hamann, the photographs would only satisfy a normal curiosity in the average individual and no one photograph was "any more explicit or any more likely to attract a prurient interest than any of the others." Thus, we believe Hamann's appraisal of the photographs demonstrates that any questions regarding his opinion concerning the prurient appeal of the pictures were harmless. We conclude, therefore, that the trial court's allowance of this line of questioning by the prosecutor did not constitute reversible error.

Defendant's fourth contention is that the trial court abused its discretion in imposing a sentence of 140 days' incarceration upon defendant. Defendant maintains that he was improperly sentenced to 140 days' imprisonment because: (1) the trial court was predisposed to incarcerate obscenity defendants; (2) the sentence was disproportionate to sentences imposed upon other obscenity defendants; and (3) the

sentence was intended as a prior restraint on communicative activity.

■ Defendant claims that the sentencing judge disfavored obscenity defendants and was predisposed to sentence such defendants to jail. The claim is largely based on remarks made by the trial judge in sentencing defendant. The trial judge referred to an appellate opinion of this court in an obscenity case involving this same judge, wherein the judge had sentenced a defendant, similarly situated to this defendant, to a term of imprisonment. Contrary to defendant's contention that the remarks by the trial judge illustrated the judge's predisposition to incarcerate obscenity defendants and the judge's failure to consider even the possibility of probation as required by law (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—1), we are of the same opinion as the State, *i.e.*, that the remarks were intended to show that precedent existed for imprisoning defendants convicted of nonviolent crimes who had led a prior good life.

Defendant claims that the trial judge undertook no analysis of the factors necessary to make a sentencing decision (Ill. Rev. Stat. 1983, ch. 38, par. 1005—4—1(a)), and that his pronouncement of sentence demonstrated that he had given no consideration to probation, conditional discharge, or supervision as viable alternatives for this first-time offender who had committed a nonviolent crime. We note, however, that defendant never sought these alternatives in the lower court but merely asked that, as his punishment, a fine be imposed.

The record shows that the factors necessary to make a sentencing decision were present for the court's consideration. First of all, the judge, like the jury, heard and saw all of the evidence presented. Additionally, at the sentencing hearing, the judge heard mitigation evidence in the form of testimony by defendant's wife. The judge also heard argument as to sentencing alternatives. The State argued for the maximum sentence of 364 days and a fine of $1,000, stressing the fact that defendant was not a simple clerk but the manager of the Sunset Theater and that the imposition of a severe punishment might deter others from wanting to manage such establishments. Defense counsel argued that defendant was a mere employee of a drive-in theater who had been found guilty of a Class A misdemeanor and that, as a first-time offender, the appropriate penalty was a monetary one.

In sentencing the defendant, the judge's comments included his recitation from *People v. Hobbs* (1978), 59 Ill. App. 3d 793, 804, 375 N.E.2d 1367, *cert. denied* (1979), 440 U.S. 976, 59 L. Ed. 2d 795, 99 S. Ct. 1547, that a court may reach a decision that probation would deprecate the seriousness of the offense and that, in so determining, the court may examine all of the surrounding circumstances, drawing

reasonable inferences therefrom. This court's reading of the judge's references to *Hobbs* is that the judge was adopting his own remarks from *Hobbs* as his basis for sentencing this defendant to a term of incarceration.

Sections 5—6—1(a)(1) and (2) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—6—1(a)(1), (2)) establish that a trial court may not deny probation or conditional discharge unless the court is of the opinion that a defendant's imprisonment is necessary for the protection of the public or that probation or conditional discharge would deprecate the seriousness of defendant's conduct and would be inconsistent with the ends of justice. However, it is well established that the trial court does not have to expressly recite that "imprisonment is necessary for the protection of the public" or that "probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice" to establish substantial compliance with sections 5—6—1(a)(1) or (2). (See *People v. Cox* (1980), 82 Ill. 2d 268, 281, 412 N.E.2d 541; *People v. Roberts* (1983), 115 Ill. App. 3d 384, 388, 450 N.E.2d 451.) Here, the judge's reference to the *Hobbs* case was, in our view, sufficient to establish substantial compliance and leads us to conclude that the trial judge did not arbitrarily deny defendant a lesser sentence than imprisonment, but rather imposed a sentence which was clearly within the statutory limitations for a defendant convicted of a Class A misdemeanor and which was also aimed at deterring others.

■ Next, defendant contends his sentence was improper because it was disproportionate to the seriousness of the crime and, thus, constituted an extreme penalty. Defendant was convicted of a Class A misdemeanor, an offense for which he could have received a penalty of up to 364 days in jail. Defendant lists, in his brief, obscenity cases for which fines were largely imposed rather than terms of imprisonment. But, as defendant himself notes, few of these cases reflect the individual backgrounds or records of the defendants' sentences. Thus, no valid comparison can be made as to why these defendants received fines while the defendant in the instant case received a term of imprisonment. Moreover, in every criminal case, the penalty imposed must be determined on an individual basis. *People v. Shook* (1980), 86 Ill. App. 3d 174, 179, 407 N.E.2d 976.

The record in the case at bar establishes that it was known to the sentencing judge that the defendant had no prior criminal record. Nevertheless, terms of imprisonment for defendants convicted of obscenity but possessing "exemplary" records have been previously up-

held by this court. (See *People v. Hobbs* (1978), 59 Ill. App. 3d 793, 804, 375 N.E.2d 1367, *cert. denied* (1979), 440 U.S. 976, 59 L. Ed. 2d 795, 99 S. Ct. 1547.) It was also known to the judge that defendant was the manager of the Sunset Outdoor Theater and not merely a clerk. In light of this fact, it is not unreasonable to conclude that defendant's incarceration was intended to specifically discourage others from desiring to manage establishments which furnish obscene materials. Moreover, as we have concluded above, the trial judge considered the deterrence of others when he pronounced his sentence upon the defendant. As deterrence of others is properly considered in imposing a sentence in excess of the minimum (*People v. Griffin* (1981), 94 Ill. App. 3d 165, 167, 418 N.E.2d 817), we find that defendant's sentence was not excessive and not the result of an abuse of the trial court's discretion.

■ Defendant also claims that the imposition of a period of incarceration was intended as a prior restraint because the sentence was designed to curb the communicative activities of bookstores or theaters selling and exhibiting materials presumptively protected by the first amendment. This contention, however, is easily disposed of by reference to the United States Supreme Court's decision in *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 43 L. Ed. 2d 448, 95 S. Ct. 1239, wherein the supreme court established that a prior restraint occurs when, without any judicial determination, a communication is characterized as obscene and suffers a detriment to its further communication. As the State correctly points out in its brief, the defendant here was not restrained from selling the magazine in question. Also, the material was not deemed obscene until after a judicial proceeding on its contents was held. Thus, unless it can be shown that the sentence by the trial judge in the instant case was designed to censor material prior to a judicial determination that the material is unprotected by the first amendment, then it cannot be concluded that the sentence constituted a prior restraint. Clearly, the record here does not indicate that this was the situation in this case. Thus, we are convinced that the trial court's imposition of a period of incarceration was not an attempt by the court to impose a prior restraint.

The determination and imposition of a suitable sentence is a matter involving considerable discretion and the trial judge's decisions pertaining to sentencing are entitled to great deference and weight. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882; *People v. Jordan* (1985), 130 Ill. App. 3d 810, 814, 474 N.E.2d 1283.) Upon review, it is our function to determine whether the trial court

exercised that discretion and whether it abused that discretion in imposing sentence. (*People v. Kuesis* (1980), 83 Ill. 2d 402, 408, 415 N.E.2d 323.) Based on the record before this court, we cannot conclude that the sentencing decision by the trial court was an abuse of discretion.

Defendant's final contention is that the Illinois obscenity statute is unconstitutional. In this court the defendant sets forth a number of reasons why the Illinois obscenity statute is unconstitutional, nearly all of which have been recently proposed to, addressed by, and rejected by this court in *People v. Pope* (1985), 138 Ill. App. 3d 726, 486 N.E.2d 350. Here, we reach the same conclusions we previously reached in *Pope*.

Defendant first contends that the Illinois obscenity statute (Ill. Rev. Stat. 1983, ch. 38, par. 11—20) is unconstitutional because it is vague and overbroad and denies rights and privileges guaranteed under the first and fourteenth amendments to the Constitution of the United States. However, the Illinois Supreme Court has consistently held that the obscenity statute is not impermissibly vague or overbroad, that prohibitions are clear, and that it does not invade areas of personal freedom. *People v. Ridens* (1974), 59 Ill. 2d 362, 321 N.E.2d 264; *People v. Ward* (1976), 63 Ill. 2d 437, 441, 349 N.E.2d 47.

Defendant relies on *State v. Princess Cinema of Milwaukee, Inc.* (1980), 96 Wis. 2d 646, 292 N.W.2d 807, to support his claim that the Illinois legislature needs to redefine obscenity. In *Princess Cinema,* the Wisconsin Supreme Court refused to further judicially construe the Wisconsin obscenity statute and called upon the Wisconsin legislature to redefine obscenity so as to agree with the most recent United States Supreme Court cases in the area of obscenity. Defendant argues that, like the Wisconsin obscenity statute, the Illinois obscenity statute has a long history of judicial reconstruction and, therefore, should be redefined. However, Illinois courts have never been reluctant to construe the constitutionality of the Illinois obscenity statute and, thus, defendant's argument here appears to have little merit. Moreover, the decision of a reviewing court from another State that it will no longer judicially construe its State obscenity statute is not precedentially binding on this court. *Ladd Construction Co. v. Insurance Co. of North America* (1979), 73 Ill. App. 3d 43, 47, 391 N.E.2d 568.

Defendant also argues that this court should declare the Illinois obscenity statute unconstitutional and in need of legislative revamping because there still remain unanswered questions regarding its construction. First, defendant mentions that no Illinois court has ever ruled on whether the third element of the test for obscenity, *i.e.,*

whether the work is "utterly without redeeming social value," should be adjudged on an objective basis or by an application of statewide community standards. However, as the State correctly points out in its brief, defendant never specifically explains how this issue arises in the instant case. Defendant never argued below that an objective standard should be applied in adjudging whether the magazine in question was "utterly without redeeming social value." Rather, defendant himself stressed the application of a statewide community standard when he tendered his IPI instruction defining obscenity, an instruction which he had modified to specifically instruct the jury that it was to apply a community standard.

Additionally, defendant raises the issue of including children in determining the relevant community standard, contending that it is questionable whether children should be considered part of the relevant community. The Illinois obscenity statute specifically sets forth when children can be considered part of the community. Section 11—20(c) of the statute states that "[o]bscenity shall be judged with reference to ordinary adults" and that children should be considered as part of the relevant community only when the allegedly obscene materials are designed or directed to children. (Ill. Rev. Stat. 1983, ch. 38, par. 11—20(c).) Therefore, because the Illinois obscenity statute clearly establishes that children are to be included in determining a statewide community standard only when they are the intended recipients of the allegedly obscene materials at issue in a case, defendant's contention that that question remains unanswered is without merit.

Finally, we note, as we did in *People v. Pope* (1985), 138 Ill. App. 3d 726, 486 N.E.2d 350, that "since the Illinois Supreme Court has declared the Illinois obscenity statute to be constitutional, the defendant is in the wrong forum for the relief he seeks. When the supreme court of this State has declared the law [on] any point, only it can overrule and modify its opinion, and an appellate court is bound by its decision." *People v. Pope* (1985), 138 Ill. App. 3d 726, 736, 486 N.E.2d 350; *Village of Morton v. Thomas* (1983), 116 Ill. App. 3d 676, 680, 452 N.E.2d 865; *People v. Tannahill* (1976), 38 Ill. App. 3d 767, 770-71, 348 N.E.2d 847.

For all of the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

NASH, P.J., and LINDBERG, J., concur.