THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES BRABSON, Defendant-Appellant.

Third District   No. 76-426

Opinion filed November 3, 1977.

Robert Agostinelli and Larry Mackey, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, Charles Brabson, was charged with taking a billfold and currency from Thomas Kiefer. A jury in the Circuit Court of Peoria County found the defendant guilty of the crime of theft from the person in violation of section 16—1 of the Criminal Code of 1961 (Ill. Rev. Stat.

1975, ch. 38, par. 16—1(a)(1)), and he was sentenced to a term of imprisonment of not less than three nor more than nine years. In addition to the charge of theft from the person, defendant was initially indicted for the offense of robbery. However a directed verdict in favor of the defendant was ordered at the close of the People's case on the robbery charge. On appeal from his conviction the defendant asserts, first, that the trial court erred in refusing his tendered instruction on the affirmative defense of intoxication, and second, that he was denied a fair trial where the jury, while leaving the court room, observed him handcuffed and in the custody of a deputy as he was being returned to jail.

At trial the State produced three witnesses: Jeffrey Dunbar, Ralph Martin and the alleged victim, Thomas Kiefer. Their story was that they met with each other on the evening of November 1, 1975, at a tavern in Chillicothe, Illinois, and were drinking beer and shooting pool together. Around midnight five men came into the tavern, none of whom being known to Dunbar, Martin or Kiefer. The strangers had some beer and joined the three men in their pool game. Martin recalled that all five individuals were drinking and that at least two rounds were purchased. At 1 a.m., the entire group of eight individuals left the tavern in Chillicothe and decided to drive to another tavern in Peoria which stayed open later and where they could continue their pool game and drinking. The group left in two separate cars, going first to Dunbar's apartment. Before leaving the Chillicothe tavern, 12 beers were purchased and split between the two cars. When the two vehicles left for Peoria from Dunbar's apartment, Martin was in the other vehicle with three of the strangers and Dunbar drove his car and carried Kiefer, the defendant and one of the defendant's friends. Dunbar and Kiefer identified the defendant and testified that he was riding in the front passenger's seat, next to Kiefer, who was in the middle and next to Dunbar, the driver. The defendant's friend was alone in the back seat.

The two vehicles took different routes to the Peoria tavern and when the Dunbar group pulled into the lot, they discovered that the car in which Martin was riding was not there. Someone suggested that the other group may have gone to a party at another location. Dunbar testified that they left the tavern almost immediately and travelled to another part of town looking for the party. He recalled that he stopped his car on one street and began scanning the residences in order to find the right house. Dunbar remembered that Kiefer had his billfold out at this time and recalled that, while he was looking for the house, he heard Kiefer yell that he had been robbed. Dunbar saw the defendant and his friend running from his car but admitted that he had not observed the full sequence of events since he had had his head turned toward the houses.

Kiefer testified that when Dunbar stopped the car, the person in the back seat got out first, followed by the defendant who asked the witness if he could borrow a couple of dollars. Kiefer stated that he thought that the defendant wanted the money to buy beer. Kiefer pulled out his billfold, determined that he did not have any small bills, and as he began to close the wallet the defendant grabbed it and started running away. The victim agreed that the defendant did not use any force or strike him in any way in taking the wallet. Dunbar testified that during the evening Kiefer had been attempting to coax the defendant and his friend into purchasing additional marijuana for Kiefer, and it was for that reason that he had pulled out his wallet.

There was various testimony at the trial concerning the intoxication of the various persons. The victim and his two companions readily admitted considerable drinking and that they had smoked marijuana during the evening of the incident. The defendant's only witness, Officer John Fiers, testified that he had spoken to the victim, Thomas Kiefer, and that Kiefer had told the officer that he was intoxicated at the time of the alleged robbery.

The testimony indicated that the defendant and his group were also drinking during the evening in question. Defendant apparently had only a few drinks at the Chillicothe tavern because the State's witnesses testified that only two rounds of drinks were purchased at the Chillicothe tavern. Defendant additionally helped to drink the six-pack of beer that had been purchased and smoked some marijuana during the trip to Peoria.

■■ Defendant's first claim of error is that the trial court erred in refusing to give his tendered instruction on the affirmative defense of intoxication. The defendant tendered Illinois Pattern Jury Instruction, Criminal, No. 24.02 which provides, "An intoxicated person is criminally responsible for his conduct unless his intoxication renders him incapable of acting knowingly and intentionally." This offered jury instruction is an embodiment of the affirmative defense of voluntary intoxication as codified by section 6—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 6—3(a)). We agree that the defense of voluntary intoxication is available as a defense to a crime that involves a specific intent or malice. (*People v. Freedman* (1954), 4 Ill. 2d 414, 123 N.E.2d 317.) In this case the crime of theft from the person is a specific intent crime and the defense of voluntary intoxication may be employed if the facts of the case warrant.

■■■ The statutory definition of affirmative defense is " 'Affirmative defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon." (Ill. Rev. Stat. 1975, ch. 38, par. 3—2(a).) Were it not

for the State's initial argument that the issue has been waived for purposes of appeal, we would direct our inquiry to an examination of the record to determine whether an issue of defendant's voluntary intoxication was raised. The State argues that defendant's failure to include the issue of a jury instruction on voluntary intoxication in his post-trial motion waives the issue on appeal. We agree with the case law cited to us that the failure to preserve an objection in the defendant's post-trial motion waives consideration of the issue on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76.) Even though an objection is made at the time of trial, if the objection is not included in the post-trial motion it is still waived on appeal. (*People v. Edwards* (3d Dist. 1977), 49 Ill. App. 3d 79, 363 N.E.2d 935; *People v. Rogers* (4th Dist. 1975), 32 Ill. App. 3d 788, 336 N.E.2d 784.) Defendant contends that the importance of adequate instructions in the administration of a jury system requires consideration of defendant's claim of error despite the alleged waiver of the issue on appeal. We find no serious argument by the defendant that the failure to instruct the jury here amounted to plain error, so that the waiver principle can be avoided. The record in the present case would not support a conscientious argument that the failure to instruct the jury on the defense of voluntary intoxication amounted to plain error or that a jury would have reached a different result. To the contrary, the facts as presented in the record do not form a basis from which the conclusion could be drawn that defendant's drinking on the evening in question was sufficient to constitute intoxication to the extent to be a recognizable defense to the crime of theft from the person. See *People v. Shackles* (4th Dist. 1977), 44 Ill. App. 3d 1024, 358 N.E.2d 1329.

■■ Defendant's second claim of error, which has been properly preserved on appeal, is that the jury's seeing him shackled and in custody of a police officer as they left the courtroom required that a mistrial be declared. We are in general agreement with the rule of law that forcing a defendant to appear in the courtroom and stand trial while he is manacled or in prison garb is a denial of due process. (*Estelle v. Williams* (1976), 425 U.S. 501, 48 L. Ed. 2d 126, 96 S. Ct. 1691.) However, we do not believe the innocuous and inadvertent exposure of the defendant to the jury while he was being led handcuffed by a deputy back to his jail cell was a proper ground for a mistrial. Defendant was only viewed for a short time by the jury and we believe the degree of prejudice, if any, that resulted is not sufficient to constitute reversible error. The present facts are very similar to *People v. Dismuke* (2d Dist. 1972), 3 Ill. App. 3d 553, 278 N.E.2d 152, which is also a limited view case. There the court conceded that such an occurrence amounted to error but concluded that the error was harmless.

138

We agree with the reasoning of the *Dismuke* case and determine that the unfortunate but inadvertant occurrence in the present case was only harmless error.

For the reasons stated the judgment of conviction of the Circuit Court of Peoria County is affirmed.

Judgment affirmed.

STENGEL, P. J., and STOUDER, J., concur.