THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICHARD BACZKOWSKI, Defendant-Appellant.

Second District   No. 2—87—0498

Opinion filed February 21, 1989.—Rehearing denied April 5, 1989.

G. Joseph Weller and Barbara R. Paschen, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

The defendant, Richard Baczkowski, was convicted of battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—3(a)(2)) and was sentenced to six months in the Lake County jail, one year of supervised probation, alcohol abuse evaluation and treatment in an outpatient program, and attendance at Alcoholics Anonymous meetings for 90 days. He appeals, contending: (1) that the trial court erred in giving the jury a non-Illinois Pattern Jury Instruction, which misstated the law and conflicted with other given instructions; and (2) that he was denied the effective assistance of counsel in that the public defender presenting his case failed to properly introduce expert testimony in order to adequately advise the jury of the defendant's voluntary intoxication defense.

We agree with the defendant's initial contention and reverse the conviction. In light of this holding, we do not consider the defendant's second contention.

On August 11, 1986, the defendant was admitted to the emergency room of Good Shepherd Hospital in Barrington, Illinois, exhibiting signs of intoxication. He was brought into the hospital by a rescue squad and was lying, restrained, on a stretcher. During his stay in the emergency room, the defendant flailed and thrashed about on the stretcher, spitting and verbally abusing the emergency room staff in general, and the individual medical personnel who treated him in particular. Dr. Ronald Tanowye examined the defendant and ordered various blood tests. Emergency room nurse Annette Ray attempted to

draw the blood for these tests, and while she was so engaged, the defendant reached through the bars of the emergency room stretcher and pinched the nurse on her left buttock. Nurse Ray sought the assistance of hospital security personnel to subdue the defendant; ultimately she was successful in withdrawing blood for the laboratory tests. The defendant received intravenous fluid treatments, ordered by Dr. Tanowye for the purpose of lowering the defendant's blood-alcohol level, for approximately 2½ hours, at which time the defendant was led out of the emergency room in a standing position by Lake County sheriff's police. He was charged with battery with regard to his pinching of Nurse Ray.

The defendant was represented by a public defender in a jury trial on March 31, April 1 and 2, 1987. The State elicited testimony from Nurse Ray and Mr. Ray Grimes, the security guard who assisted Nurse Ray in the emergency room. The defendant offered his testimony, as well as that of Dr. Tanowye and Linda Gaasrud, the medical technologist at Good Shepherd Hospital who performed the laboratory tests on the defendant's blood samples. The defendant also offered the testimony of Alison Oliver, an alcoholism and substance abuse counselor, for the purpose of her expert testimony regarding the effects of varying blood-alcohol levels on human behavior. This testimony was ruled out of order as it was offered prior to the admission of the blood-test results, and Ms. Oliver was never recalled.

Nurse Ray, Mr. Grimes and Dr. Tanowye all testified that the defendant was clearly intoxicated during his stay in the emergency room; however, their testimony conflicted as to the degree of the defendant's intoxication. Nurse Ray stated that the defendant's speech was slightly slurred and somewhat rambling and that the defendant spit so much that "the curtain [enclosing his cubicle in the emergency room] was laundered *** when he left because it was so wet." Nurse Ray further testified that she did not believe the defendant was so intoxicated that he did not know what he was doing.

Mr. Grimes stated that the defendant's speech was quite clear, that the defendant was thrashing around, and that he was "pretty obnoxious."

Dr. Tanowye testified that the defendant was spitting and thrashing around and that the defendant was severely intoxicated. The doctor also stated that he believed the defendant was acutely intoxicated and that his opinion regarding the defendant's intoxication was based upon his experience as an emergency room physician, his observation of the defendant in the emergency room, and the defendant's blood-alcohol level as indicated by the blood-test result.

Ms. Gaasrud testified that she had performed a laboratory analysis upon the defendant's blood sample which indicated his blood-alcohol level to be 394 milligrams per deciliter.

The defendant testified that he was a chronic alcoholic and had been arrested 50 or 60 times in the past, always while he was intoxicated. He further testified that he had no recollection of the events leading up to his admission to the Good Shepherd Hospital on the day in question, nor did he recall any of the events which took place there, including his alleged pinching of Nurse Ray. He did state that he remembered being led out of the hospital by the sheriff's police.

At the close of evidence, both parties offered jury instructions. People's instruction No. 7 stated:

> "A person commits the offense of battery when he, knowingly without legal justification and by any means makes physical contact of an insulting nature with another person."

This instruction corresponds to Illinois Pattern Jury Instructions, Criminal, No. 11.05 (2d ed. 1981) (IPI Criminal 2d) and tracks the language of section 12—3 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 12—3(a)(2)).

In his instruction No. 3, the defendant incorporated the language of section 4—5(b) of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 4—5(b)) and defined the term "knowingly" as follows:

> "A person acts knowingly when he is consciously aware that a certain result is practically certain to be caused by his conduct."

The defendant also tendered, as his instruction No. 2, the affirmative defense of voluntary intoxication as provided in IPI Criminal 2d No. 24-25.02:

> "An intoxicated person is criminally responsible for his conduct unless his intoxication renders him incapable of acting knowingly."

The State offered People's instruction No. 10, which stated:

> "For voluntary intoxication to be a legal defense, the level of intoxication must be so extreme as to suspend all power of reason and render the defendant incapable of any mental action."

The court gave all the above to the jury, including People's instruction No. 10, a non-IPI instruction to which the defendant objected.

The jury returned a guilty verdict on the charge of battery. At sentencing, the defendant filed a motion for a new trial, arguing that the court had erred in giving People's instruction No. 10, as it was not an accurate statement of the law. The defendant additionally argued that the court erred in preventing Linda Gaasrud, the medical

technician who performed the blood test, from testifying regarding scientific standards in that a blood-alcohol reading of 150 was "toxic" and that a reading of 400 was "lethal." In this same vein, the defendant asserted that the court erred in preventing him from discussing the standards in closing argument and from relating the standards to the defendant's blood-alcohol level in that such presentation was crucial to his defense of voluntary intoxication. The court denied the defendant's motion for a new trial and sentenced him to six months in the Lake County jail, one year of supervised probation and various alcoholism treatments. The defendant timely appeals.

■ On appeal, the defendant contends that the trial court erred in giving the jury the State's non-IPI instruction defining the defense of voluntary intoxication because said instruction was in conflict with the IPI instruction regarding the same subject and said instruction did not accurately state the law. The defendant further contends that he was denied the effective assistance of counsel on the ground that the public defender who presented his case misapprehended the rules concerning the admission of expert testimony and thereby failed to adequately apprise the jury of his voluntary intoxication defense. We hold that the giving of the non-IPI instruction was reversible error and do not address the defendant's second contention.

■ Section 6—3(a) of the Code provides the affirmative defense of voluntary intoxication as follows:

> "A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition *** [i]s so extreme as to suspend the power of reason and render him incapable of forming a specific intent which is an element of the offense ***." (Ill. Rev. Stat. 1987, ch. 38, par. 6—3(a).)

Thus, in Illinois, it is well established that voluntary intoxication is not a defense to charges of criminal conduct unless it can be shown that the intoxication "is so extreme as to make impossible the existence of a mental state which is an element of the crime." (*People v. Lewis* (1988), 165 Ill. App. 3d 97, 106, 518 N.E.2d 741, 747.) A defendant charged with a specific intent crime may avail himself of this affirmative defense, and battery is such a crime. *People v. Brabson* (1977), 54 Ill. App. 3d 134, 136, 369 N.E.2d 346, 348; *People v. Hayes* (1976), 37 Ill. App. 3d 772, 774, 347 N.E.2d 327, 329.

■ There is no dispute that defendant was intoxicated at the time of the alleged battery; thus, voluntary intoxication is a valid defense in this case. The State argues, however, that such defense could not have possibly prevailed in the instant matter. The State contends that defendant's mental state can be inferred from the nature of the

alleged criminal conduct, *i.e.*, the defendant's pinching of Nurse Ray on the left buttock. The State asserts that such an act "inherently requires a knowing or intentional state \*\*\*. Such an action requires volition and thus the formation of such a state." Thus, the State argues, since the defendant could not have excused his conduct by showing he lacked "a knowing or intentional mental state," issues related to the defense of voluntary intoxication should not result in reversal of the conviction. The State's reasoning is contrary to the law. Generally speaking, we can infer the requisite mental state of an individual from the character of his act; *however*, once the individual has introduced evidence to show that an intoxicated condition negated the existence of the requisite mental state and such evidence raises a reasonable doubt, the State must then overcome the affirmative defense by proving, beyond a reasonable doubt, the existence of the requisite mental state. (*People v. Gutknecht* (1984), 121 Ill. App. 3d 839, 846, 460 N.E.2d 60, 65; *People v. Aguirre* (1975), 30 Ill. App. 3d 854, 857, 334 N.E.2d 123, 126.) The State's argument assumes a *per se* rule with regard to certain acts despite evidence tending to show a defendant's intoxication. No such rule exists in Illinois.

With regard to the giving of the State's tendered non-IPI instruction, we believe that *People v. Haywood* (1980), 82 Ill. 2d 540, 413 N.E.2d 410, is controlling. Haywood was found guilty of murder following a jury trial at which he had adduced evidence establishing that he was intoxicated at the time of the alleged crime. The State submitted two instructions regarding the defense of voluntary intoxication, and the court gave both to the jury. The first, to which the defendant did not object, was IPI Criminal No. 24.02, which provided:

> "An intoxicated person is criminally responsible for his conduct unless his intoxication renders him incapable of acting knowingly and intentionally." (*Haywood*, 82 Ill. 2d at 544, 413 N.E.2d at 412.)

The State also submitted the following instruction, which the court gave to the jury over Haywood's objection:

> "While intoxication may be used to nagative [*sic*] the element of intent when it is extreme, merely being drunk or intoxicated is not a sufficient defense. Only if the Defendant's intoxication is so extreme as to suspend entirely his power of reason, rendering him incapable of any mental action, is that intoxication a defense to the offense of Murder." 82 Ill. 2d at 544, 413 N.E.2d at 412-13.

We note that these instructions match defendant's instruction No. 2 (IPI Criminal 2d No. 24—25.02) and People's instruction No. 10 (the

disputed non-IPI instruction) at issue in the case at bar nearly word for word.

On appeal, Haywood argued that the State's latter instruction was misleading to the jury in that the phrase "rendering him incapable of any mental action" could imply "a state of unconsciousness, or at least *** a higher degree of intoxication than is necessary to constitute the defense under the law." (*Haywood*, 82 Ill. 2d at 544-45, 413 N.E.2d at 413.) As such, Haywood argued that the State's instruction was not an accurate statement of the law and required reversal.

In considering Haywood's appeal, the supreme court discussed the history and purpose behind the drafting of the Illinois Pattern Jury Instructions. The court said:

"[E]ach instruction was painstakingly drafted with the use of simple, brief and unslanted language so as to clearly and concisely state the law. To insure the use of such instructions, this court adopted Rule 451(a), which requires that an instruction in IPI be given where applicable, unless the court determines that the instruction does not accurately state the law. It is axiomatic, therefore, that the use of additional instructions on a subject already covered by IPI would defeat the goal that all instructions be simple, brief, impartial and free from argument." *Haywood*, 82 Ill. 2d at 545, 413 N.E.2d at 413.

The supreme court held that the IPI instruction given on the defense of voluntary intoxication was "a simple, clear and concise statement [of the law and as such] needs no embellishment, explanation or further definition." (82 Ill. 2d at 545, 413 N.E.2d at 413.) The court further held that the State's non-IPI instruction was confusing, ambiguous and conflicted with IPI Criminal No. 24.02. The court agreed with Haywood's assertion that the non-IPI instruction could have been interpreted by the jury so as to require "the defendant to be devoid of any mental activity whatsoever or to be in a state of unconsciousness. This is not the law in Illinois, and the trial court committed reversible error in allowing [the non-IPI instruction] to be given to the jury." *Haywood*, 82 Ill. 2d at 546, 413 N.E.2d at 413.

The supreme court's holding in *Haywood* is based on two interrelated principles. The first is set out in Supreme Court Rule 451(a), which provides in pertinent part:

"Whenever *** the court determines that the jury should be instructed on [a] subject, the IPI Criminal 2d instruction shall be used, unless the court determines that it does not accurately state the law." 107 Ill. 2d R. 451(a).

The second principle relied upon by the *Haywood* court is that the giving of conflicting instructions, one of which is a correct statement of law and the other an incorrect statement of law, is not harmless error. The *Haywood* court reasoned that such conflicting instructions inhibit a jury's ability to perform its function because it has not been adequately apprised of the law to be applied in a given case. *Haywood*, 82 Ill. 2d at 545, 413 N.E.2d at 413.

Turning to the case at bar, we note many parallels between it and the situation presented in *Haywood*: (1) there is no dispute that the defendant was intoxicated at the time of the alleged crime; however, the degree of his intoxication is in question; (2) the defendant has raised the affirmative defense of voluntary intoxication; (3) the trial court gave the jury the approved IPI Instruction defining such defense (IPI Criminal 2d No. 24—25.02); and (4) the trial court also gave the jury a non-IPI instruction purporting to define the affirmative defense of voluntary intoxication so as to require intoxication so extreme that it renders the actor "incapable of any mental action" (see *Haywood*, 82 Ill. 2d at 544, 413 N.E.2d at 412-13; see also People's instruction No. 10 in the instant case). In spite of these striking parallels, the State, in its brief to this court, claims that the *Haywood* decision is misleading and inapplicable to the instant facts because the supreme court did not expressly state that the instructions at issue in fact conflicted, but rather held that the possible misinterpretation of the non-IPI instruction conflicted with the meaning of the IPI instruction. Thus, the State reasons, if the instructions as a whole are sufficiently clear that there is no potential for a conflicting misconstruction, no reversal obtains. We do not agree with the State's characterization of *Haywood*, nor do we believe that, in the instant case, the instructions as a whole are sufficiently clear to preclude any possible misinterpretation by the jury.

The statutory defense of voluntary intoxication expressly states that such defense excuses criminal conduct when an individual is so intoxicated as to be "incapable of forming a specific intent which is an element of the offense." (Ill. Rev. Stat. 1987, ch. 38, par. 6—3(a).) At the time the supreme court was considering Haywood's appeal, the statute provided for voluntary intoxication as a defense when an individual's intoxication was so extreme it "[n]egatives the existence of a mental state which is an element of the offense." (Ill. Rev. Stat. 1985, ch. 38, par. 6—3(a).) Neither wording of the statute requires that a defendant asserting the defense must establish that, at the time of the alleged crime, he was "incapable of *any* mental action" (emphasis added), as provided in People's instruction No. 10. Clearly, this de-

fense does not require a showing that the defendant is devoid of any mental activity or is in fact unconscious. (See *Haywood*, 82 Ill. 2d at 546, 413 N.E.2d at 413.) Obviously, it is true that if an individual's intoxicated state is so great that he is devoid of any mental action whatsoever, he cannot be convicted of a specific intent crime (*People v. Winters* (1963), 29 Ill. 2d 74, 80-81, 193 N.E.2d 809, 813), but one is not required to make this extreme showing in order to successfully invoke the affirmative defense.

■■ ■ The State's arguments in favor of its non-IPI instruction further fly in the face of the requirements of Supreme Court Rule 451(a) that non-IPI instructions shall be used only if no IPI instructions on a specific subject exist, or if the existing IPI instruction does not contain an accurate statement of the law. (107 Ill. 2d R. 451(a); see also *People v. Pope* (1985), 138 Ill. App. 3d 726, 741, 486 N.E.2d 350, 358-59; *People v. Morrison* (1985), 138 Ill. App. 3d 595, 599, 486 N.E.2d 345, 348.) Jury instructions should not be misleading or confusing, and, when viewed as a whole, the instructions should properly inform the jury of the applicable law. *Pope*, 138 Ill. App. 3d at 740, 486 N.E.2d at 358.

We think it clear that the IPI instruction given in the instant case regarding the affirmative defense of voluntary intoxication reflects a correct and concise statement of the law; likewise, we think it clear that People's instruction No. 10 as given to the jury in the instant matter served only to confuse the issue by redefining the affirmative defense, and, further, it does not accurately state the law. The giving of this instruction was reversible error.

In light of our holding above, we do not reach the defendant's contention regarding the alleged ineffective assistance of counsel.

The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

REINHARD and NASH, JJ., concur.