THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CEDRIC L. MITCHELL, Defendant-Appellant.

Fourth District    No. 4—85—0185

Opinion filed August 27, 1985.

Daniel D. Yuhas and Timothy M. Gabrielsen, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Gwendolyn Klingler, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MORTHLAND delivered the opinion of the court:

The defendant, Cedric L. Mitchell, was convicted of home invasion, armed violence, and residential burglary by a Champaign County circuit court jury. The trial court subsequently merged the residential burglary count into the armed violence count and imposed a 20-year prison sentence for both the home invasion and the armed violence convictions, the sentences to run concurrently. The defendant appeals from the judgment, contending the trial court erred in refusing his proffered self-defense instructions. We affirm the trial court judgment.

The defendant's victims testified that on October 27, 1984, at around 8:30 p.m., the defendant appeared in the rear entrance of their Champaign apartment brandishing a .22-caliber rifle. Simultaneously, the defendant's companion, identified only as "Sticks," knocked at the apartment's front door. One of the victims, James Peterson, testified that when he answered the front door, Sticks pushed him back into the apartment, entered, and locked the front door. Peterson states that the defendant then ordered Peterson and his roommate, Steven White, to lie on the floor or he would "blow your head[s] off." According to Peterson and White, the defendant and Sticks then began to ransack the apartment, apparently searching for drugs. Sticks and the defendant gathered stereo equipment, a shotgun, and a revolver belonging to the victims and deposited these items in the living room. At some point, Sticks went upstairs to the bedrooms, leaving the defendant to guard the two victims. When the defendant's companion left the first floor, Steven White was able to get up from the floor and strike the defendant with a nearby "bong," a smoking device commonly used for marijuana. The blow staggered the defendant

and Peterson then grabbed the rifle barrel. During this scuffle, the rifle discharged, the projectile going through a window. The testimony shows that White then picked up the shotgun from the floor and struck the defendant repeatedly, breaking the weapon's stock. During this fracas, the defendant was also struck with his own rifle with sufficient force to break this gun's stock as well. Peterson and White were finally able to subdue the defendant. Peterson then went upstairs in pursuit of Sticks, but the other intruder was able to escape from a bedroom window. When Peterson returned downstairs, he and White moved the defendant into the kitchen and gave him a towel to staunch the bleeding from his head. They then summoned the Champaign police. At this point, the defendant escaped from the kitchen and, after a further struggle with Peterson, left through the apartment's front door. The defendant was apprehended later in the evening while seeking treatment at the Carle Clinic emergency room in Urbana. Both victims identified the defendant while he was at the hospital.

The defendant testified at trial and presented a different version of the facts. He stated that he had met with Sticks about 8 p.m. on the evening in question. At that time, Sticks told the defendant that he knew where they could obtain some marijuana. The two then proceeded to the apartment of Peterson and White, where the two residents invited them to enter. The defendant testified that he was unarmed when he entered the apartment. The defendant further testified that, upon entering the apartment, Sticks began negotiating for the purchase of a small amount of marijuana. These negotiations became heated, and Peterson and White then attacked Sticks and the defendant. Only after being attacked, the defendant testified, did he pick up any weapon or use any force against Peterson and White. During the fracas, Sticks slipped out of the apartment, and the defendant has not seen him since.

On appeal, the defendant asserts that the trial court erred in not instructing the jurors that they must find that the defendant "was not justified in using the force which he used" (Illinois Pattern Jury Instruction, Criminal, No. 24-25.06A (2d ed. 1981)), in order to find the defendant guilty of either home invasion or armed violence. The trial court refused the proffered instructions, ruling that self-defense could not properly be raised on the facts presented by the testimony.

Conviction for home invasion requires the State to prove that a defendant knowingly entered another's dwelling, without authority, knowing or with reason to know that other persons were present, and that the defendant was armed with a dangerous weapon and used or

threatened imminent use of force upon the dwelling's occupants. (Ill. Rev. Stat. 1983, ch. 38, par. 12—11(a)(1).) In the instant case, the offense would have been completed once the defendant entered Peterson's and White's apartment and threatened the occupants while carrying the .22 rifle. The jury clearly chose to disbelieve the defendant's testimony that he was invited into the apartment. By implication, the jury must have chosen to accept Peterson's and White's version of these events; specifically, that the defendant entered the apartment without permission while armed and that he threatened the two occupants. When the defendant entered the dwelling, the offense of home invasion was complete. The ensuing fracas, as well as the defendant's claim of self-defense during that scuffle, is of no relevance to the defendant's guilt on the home invasion charge. A trial court may properly refuse a defendant's proposed jury instruction when there is no evidence supporting the proffered instruction. *People v. Chatman* (1982), 110 Ill. App. 3d 19, 441 N.E.2d 1292.

Likewise, the trial court properly refused the defendant's proposed instruction on the armed violence charge. Armed violence occurs when one commits any felony while armed with a dangerous weapon. (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2.) The defendant was convicted of residential burglary, a felony, while armed with a dangerous weapon. Residential burglary consists of knowing and unauthorized entry into a dwelling with the intent to commit a felony or theft. (Ill. Rev. Stat. 1983, ch. 38, par. 19—3.) If the jury believed Peterson's and White's testimony, the defendant entered their residence without authority and with the apparent intent to commit a theft; the latter conclusion derived from testimony that the defendant and his companion collected stereo equipment and firearms belonging to the victims as if to take the goods from the apartment. As with the home invasion charge, the residential burglary became a completed offense once the defendant entered the apartment without authority while possessing the requisite mental state. His possession of the rifle as he entered the apartment completed the armed violence offense. As with home invasion, the subsequent fracas was irrelevant to the offenses charged. Likewise, no evidence suggests that the defendant committed any of the offenses charged in response to actions by Peterson and White. The trial court properly denied the requested self-defense instructions. No error.

Affirmed.

WEBBER and TRAPP, JJ., concur.