THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY L. WOLF, Defendant-Appellant.

Fourth District   No. 4—88—0897

Opinion filed July 13, 1989.

Fellheimer, Travers, Luckman & Engelman, Ltd., of Pontiac (Carey J. Luckman, of counsel), for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and Peter C. Drummond, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

Defendant Gary L. Wolf was charged on July 12, 1988, by uniform traffic citation and complaint, filed in the circuit court of Livingston County, with driving while license revoked. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—303(a).) On July 27, 1988, the defendant filed a motion requesting that the State be ordered to file a verified complaint. (Ill. Rev. Stat. 1987, ch. 38, par. 111—3.) The trial court allowed the defendant's motion, and on August 4, 1988, the State filed a verified criminal complaint charging the defendant with driving while license revoked (Ill. Rev. Stat. 1987, ch. 95½, par. 6—303(a)). Specifically, the complaint alleged that the defendant "drove and was in actual physi-

cal control of a motor vehicle, to-wit: a 1981 GMC Truck, upon a highway of this State, to-wit: upon County Highway 3150 N. at County Highway 675 E., Livingston County, Illinois, at a time when his driver's license, permit and privilege so to do and the privilege to obtain a driver's license or permit was revoked, said offense having occurred upon County Highway 3150 N. at County Highway 675 E., Livingston County, Illinois."

A jury trial commenced on September 13, 1988, and the following evidence was presented. Livingston County Deputy Sheriff Eldon Finkenbinder testified for the State. Finkenbinder testified that on the evening of July 12, 1988, he received a call to respond to an automobile accident that had occurred at the intersection of roads 3150 North and 675 East, approximately one mile southeast of Streator. Finkenbinder arrived at the scene at approximately 8:15 p.m. and observed a 1988 Oldsmobile automobile that had been involved in an accident "in the right-hand ditch eastbound." Four people were standing near the automobile. He later noticed a four-wheel drive GMC pickup truck, with a field sprayer attached to the rear, parked on the roadway approximately 80 yards west of the scene of the accident.

A man then walked from the direction of the pickup truck, approached Finkenbinder's squad car and had a conversation with Finkenbinder. Finkenbinder recognized the man as the defendant. Finkenbinder had known the defendant previously and was aware that the defendant was a licensed field sprayer. The defendant informed Finkenbinder that he had been driving the truck. According to Finkenbinder, the defendant "stated he was southbound on the blacktop road, and that he thought he saw a car behind him. Thinking that it might have been a squad car, he was trying to leave the area *** [because] he was driving revoked." Finkenbinder testified that the defendant stated "he knew he was revoked." The defendant informed Finkenbinder that he was proceeding to the Barry Highland farm, located approximately 1½ miles west and 1¼ miles south of Cornell.

Finkenbinder testified that he observed skid marks on the road, which "started before the intersection *** [and curved] to the right around the corner." He further testified that the defendant's vehicle was not headed south, in the direction of the farm near Cornell. Finkenbinder estimated that the scene of the accident was located approximately 12 miles from Cornell. Finkenbinder noted that 675 East and 3150 North were publicly maintained State highways. Finkenbinder described the defendant's vehicle as a "standard" 1981 GMC four-wheel drive pickup truck. The truck was pulling a "trailer type" field sprayer which had "a thousand gallon water tank on it with spray

booms *** in the folded up position."

Finkenbinder testified on cross-examination that he did not see the defendant in his truck. He was aware that the defendant's license had been revoked. Finkenbinder did not examine the engine of the truck. He was shown pictures of the truck and acknowledged that it had "additional equipment."

Admitted in evidence as People's exhibit No. 2 was a document from the Secretary of State certifying that a revocation order had been entered against the driving privileges of the defendant on December 12, 1987, and that the revocation was in effect on July 12, 1988.

The first defense witness was Jerry Hogan, who had worked for the defendant for three to four months and lived in the defendant's house. Hogan's duties consisted of driving for the defendant, delivering water, and making repairs. Hogan was working for the defendant on July 12, 1988. The defendant was spraying a field farmed by Dave Stipp and Hogan was delivering water to the defendant. The source of the water used to fill the sprayer tank was a pond located on land owned by Robert Legner. The defendant was using his GMC pickup truck and a John Deere "pull-type sprayer with a ground-driven pump." Hogan described the sprayer and noted that it could not move on its own power and had to be pulled. Hogan believed that the defendant had been operating the truck and sprayer for approximately four to five years. Hogan was shown various photographs of the truck and sprayer unit and described certain modifications made to the truck to accommodate the sprayer. Hogan testified that to his knowledge, the defendant did not use the truck for any purpose other than hauling the sprayer unit. The defendant did drive the truck from one field to another to perform the spraying.

On cross-examination Hogan testified that he was not with the defendant at the time of the accident on July 12, 1988. He acknowledged that he had seen the defendant driving the truck without the sprayer in town, before defendant's license had been revoked. Hogan had never driven the truck with the sprayer off, although it was detachable and the truck could be driven at normal highway speeds and could be parked in ordinary parking spaces. Hogan stated that prior to the modifications, defendant's truck was a normal GMC one-ton pickup truck. The truck was not appropriate to use with the sprayer unit until after it was modified.

Defendant's next witness was Robert Legner. Legner testified that he was a farmer and had hired the defendant to spray his fields, located in Sunbury and Nevada Townships. Legner identified the pic-

tures of defendant's pickup truck and sprayer unit as the equipment used by defendant in spraying Legner's fields. Legner also described the modifications made to the truck to accommodate the sprayer. Legner testified that the defendant had made arrangements with him to get water from Legner's pond when the defendant was operating in the Sunbury, Newton and Nevada Townships.

Legner testified on cross-examination that his three tracts of farmland are seven to eight miles apart. He acknowledged that it was necessary to drive on the roadway in order to travel from one field to another.

The defendant testified that he was 37 years old and was a licensed field crop applicator. He identified certain photographs as pictures of his pickup truck and sprayer unit. Defendant testified that he purchased the sprayer in 1975. Originally, it was pulled by a tractor; however, this method was not efficient and in 1976 he began using a heavy-duty pickup truck to pull the sprayer. The 1981 GMC pickup truck involved in the instant accident was the fourth truck he had used to pull the sprayer. The defendant described in detail the modifications made to the truck to accommodate the sprayer.

The defendant stated that on July 12, 1988, he was spraying for Dave Stipp on the Trainor farm, which was located near Blackstone. At approximately 8 p.m. the defendant's mother radioed him to inform him that Barry Highland wanted him to spray an 18-acre tract of land located near Cornell. This tract of land was "a couple of miles" from the defendant's home. The defendant finished spraying for Stipp and loaded the sprayer with water. The defendant stated that it was getting dark and he did not "like taking the main roads." According to the defendant, he went one mile north, to avoid a main road, took the county line road to Smith-Douglass road and then went south toward the Highland farm. According to the defendant, there was a lot of traffic for a Tuesday night. As he approached the intersection at 675 East and 3150 North, he noticed "some lights coming fast from behind." He was planning to turn onto 3150 North to get out of the traffic, but when he got to the corner and began braking, the wheels on his truck "locked up," perhaps due to the 600-gallon load of water in the sprayer. As he continued braking and proceeded to the corner, an automobile pulled up to the corner, at which point the sprayer hit some gravel, skidded sideways "and then slapped the car just like giving it a kick right over into the ditch."

The defendant testified on cross-examination that at the time of the accident he knew his driver's license had been revoked. The defendant acknowledged that the truck was used continuously for his

spraying operation. The defendant also indicated that the pickup truck in question had been used as a personal vehicle, for purposes other than spraying. Further, he stated that some of the modifications to the truck were made when it was being used as a personal vehicle. The defendant admitted that his license plate had expired on June 30, 1988. The defendant stated that he "wasn't real sure" if he needed a driver's license "to be doing what [he was] doing." He also stated that he became nervous when he saw the lights behind him because he did not want "any other trouble like this."

During the jury instruction conference the defendant tendered instruction Nos. 7, 8, and 9. Instruction No. 7 read:

> "The term 'farm tractor' means every motorized device designed and used primarily as a farm implement for drawing wagons, plows, mowing machines and other implements of husbandry, and every implement of husbandry which is self-propelled, excluding all-terrain vehicles and off-highway motorcycles."

Instruction No. 8 read:

> "The term 'implement of husbandry' means every vehicle designed and adapted exclusively for agricultural operations."

Instruction No. 9 read:

> "To sustain the charge of driving while license revoked, the State must prove the following propositions:
>
> *First*: That the defendant drove a motor vehicle upon any street or highway in this State; and
>
> *Second*: That at the time the defendant drove the motor vehicle upon the street or highway, his driver's license, permit and privilege to drive was revoked.
>
> *Third*: That the vehicle driven was not, at that time, an implement of husbandry or a farm tractor.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

The trial court refused these instructions, ruling that there was no evidence to show that the truck was being operated between home farm buildings and adjacent or nearby farmland as provided in the section 6—102(4) exemption to the Illinois Vehicle Code's licensing requirement. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—102(4).) The court pointed out that instead, the defendant's evidence showed that the vehicle

was driven "long distances from field, to field, to field, twenty miles here and then ten miles here, and then maybe two miles here and just all over."

Following deliberations, the jury found the defendant guilty of driving while license revoked. The trial court entered judgment on the verdict. Defendant filed a post-trial motion on October 17, 1988, alleging, *inter alia*, that the trial court erred in refusing instruction Nos. 7, 8, and 9 tendered by the defendant. The motion was denied after a hearing. Defendant was thereafter sentenced to six months' periodic imprisonment, with certain conditions. This appeal followed.

Defendant contends that the trial court erred in refusing his tendered instructions relating to his alleged affirmative defense. The defendant argues that he presented evidence on and was therefore entitled to instructions concerning his affirmative defense, the statutory exemption from the licensing requirements of the Illinois Vehicle Code (Code) under section 6—102(4) of the Code. (Ill. Rev. Stat. 1987, ch. 95½, pars. 6—101, 6—102(4).) The defendant asserts that the "legal framework" of his affirmative defense was embodied in defendant's instruction Nos. 7, 8, and 9, set forth above.

The State contends that the trial court properly refused defendant's tendered instructions. The State argues that the instructions were non-Illinois Pattern Jury Instructions (non-IPI), argumentative, and misstated the law. The State further argues that evidence in this case did not warrant the instructions.

The State's contentions are persuasive. Instructions Nos. 7, 8, and 9, tendered by the defendant, were non-IPI instructions. Courts have held that a non-IPI instruction should be used only if a pattern instruction does not contain an accurate instruction on the subject that the jury should be instructed upon and if the tendered non-IPI instruction is simple, brief, impartial, and free from argument. (*People v. Hall* (1986), 143 Ill. App. 3d 766, 491 N.E.2d 757, *cert. denied* (1987), 481 U.S. 1057, 95 L. Ed. 2d 855, 107 S. Ct. 2200; *People v. Wolfe* (1983), 114 Ill. App. 3d 841, 449 N.E.2d 980; 107 Ill. 2d R. 451(a).) It is true, as the defendant points out, that there are no IPI instructions on the subject here. However, the non-IPI instructions tendered by the defendant are incomplete, do not convey the correct principles of law, and could be considered argumentative. Defendant's instruction No. 7 quotes the definition of a "[f]arm tractor" set forth in section 1—120 of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 1—120). Similarly, defendant's instruction No. 8 quotes a portion of the definition of an "implement of husbandry" set forth in section 1—130 of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 1—130).

Moreover, defendant's instruction No. 9 does not contain an accurate, complete instruction on the statutory exemption set forth in section 6—102(4), which the defendant claims as his affirmative defense.

Section 6—102(4) of the Code provides:

"The following persons are exempt from the requirements of Section 6—101 and are not required to have an Illinois drivers license or permit if one or more of the following qualifying exemptions are met and apply:

\* \* \*

4. A person operating a road machine temporarily upon a highway or operating a farm tractor between the home farm buildings and any adjacent or nearby farm land for the exclusive purpose of conducting farm operations need not be licensed as a driver." (Ill. Rev. Stat. 1987, ch. 95½, par. 6—102(4).)

Defendant's instructions Nos. 7, 8, and 9 only pertain to the vehicle driven and whether or not it was an "implement of husbandry" or a "farm tractor." They do not convey the correct principles of law applicable to the defendant's alleged affirmative defense under section 6—102(4) of the Code. Thus, on this basis alone, the trial court was correct in refusing the instructions. See generally *People v. Pope* (1985), 138 Ill. App. 3d 726, 486 N.E.2d 350.

■ Furthermore, there was insufficient evidence to support this particular affirmative defense. The sole function of jury instructions is to convey the correct principles of law applicable to the evidence submitted to the jury. (*People v. Moya* (1988), 175 Ill. App. 3d 22, 529 N.E.2d 657.) Jury instructions enable the jury to apply the proper legal principles to the facts and arrive at a correct conclusion according to the law and the evidence. (*People v. Jones* (1986), 145 Ill. App. 3d 835, 495 N.E.2d 1371.) While it is recognized that "slight evidence" will justify an instruction on a given defense (*People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378), it is not error for the trial court to refuse a tendered instruction on a defense where there is no evidence to support that particular defense (*People v. Miller* (1974), 21 Ill. App. 3d 762, 316 N.E.2d 269; *People v. Chatman* (1982), 110 Ill. App. 3d 19, 441 N.E.2d 1292; *People v. Mitchell* (1985), 136 Ill. App. 3d 205, 482 N.E.2d 1046).

■ In the instant case, the trial court found there was no evidence that the defendant's vehicle was operated "between the home farm buildings and any adjacent or nearby farmland" as required by the exemption set forth in section 6—102(4). This finding is supported by the record. The defendant's own evidence demonstrated that the

defendant, in performing field spraying, operated his vehicle on public roadways and traveled distances greater than intended by the language in the section 6—102(4) exemption to the licensing requirement. The evidence showed that the defendant contracted with various farmers in Livingston County to spray their fields. The fields were in different locations in the county and were miles apart. Indeed, on the day of the accident the defendant's vehicle was located approximately 12 miles from his next destination. Thus, the evidence was insufficient to justify giving the defendant's instruction Nos. 7, 8, and 9. See *People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31.

For all of the foregoing reasons, the judgment of the circuit court of Livingston County is affirmed.

Affirmed.

McCULLOUGH, P.J., and GREEN, J., concur.